**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:16-CV-675-RJC-DCK**

| | | |
|---|---|---|
| **RASHECA BARROW,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **MEMORANDUM AND** |
| **v.** | ) | **RECOMMENDATION** |
| | ) | |
| **BRANCH BANKING & TRUST COMPANY,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

THIS MATTER IS BEFORE THE COURT on "Defendant's Partial Motion To Dismiss Plaintiff's First Amended Complaint" (Document No. 17). This motion has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b), and is ripe for disposition. Having carefully considered the motion, the record, and applicable authority, the undersigned will respectfully recommend that the motion for partial dismissal be granted in part and denied in part.

### FACTUAL BACKGROUND

Plaintiff Rasheca Barrow ("Plaintiff" or "Barrow") was employed by Defendant Branch Banking & Trust Company ("Defendant" or "BB&T") from June 29, 2005 until September 23, 2015, when she contends she was compelled to resign. (Document No. 14, p.4). Plaintiff is an African-American woman, who last held the title of Vice President, Community Reinvestment Act ("CRA") Investment Portfolio Manager. Id. "A major part of Ms. Barrow's work involved closing investments between the bank, major law firms, and syndicators; maintaining those relationships; dealing with attorneys and their legal fees; and making sure the loans matched the amounts approved by BB&T's Investment Committee." Id. Plaintiff contends she was a tireless worker

for Defendant who earned and maintained a stellar reputation, "and consistently received reviews and accolades that significantly exceeded expectations." Id.

Brian Coyle ("Coyle") acted as Plaintiff's "immediate manager," and Sharon Jeffries-Jones ("Jeffries-Jones") was Barrow's "upper manager" and Coyle's "immediate manager." (Document No. 14, p.5).

Plaintiff alleges that around 2012 to 2015, she was passed over for promotions in favor of white males who she contends were equally, or less qualified than Plaintiff. (Document No. 14, pp.5-7). Plaintiff also suggests that she was retaliated against after raising concerns in March 2015 about Coyle modifying a major transaction. (Document No. 14, pp.9-11). According to Plaintiff, she was "issued a trumped-up and retaliatory final written warning on April 9, 2015 under the signature of Brian D. Coyle." (Document No. 14, p.12). Plaintiff contends that Coyle's final warning "was an obvious retaliation and attempt to silence her in order to protect his own interests because she 'spotlighted' his actions." (Document No. 14, p.13). On or about May 1, 2015, Plaintiff gave notice to Defendant that she was suffering "severe emotional distress." (Document No. 14, p.14).

Plaintiff also contends that in July 2015: her job duties were revised; Coyle left her out of critical meetings; and Coyle executed a "very biased and retaliatory mid-year review for Plaintiff." (Document No. 14, p.16). Moreover, Plaintiff alleges the final written warning and mid-year review were pretextual, acts of retaliation, and part of a conspiracy between Coyle and Jeffries-Jones to have her terminated. (Document No. 14, p.17). Between August 10 – 23, 2015, Plaintiff was diagnosed by her doctor with "acute work-related stress induced anxiety," was prescribed anxiety medication, and was excused from work under the FMLA. Id.

Based on the foregoing, and other allegations, Plaintiff contends that in September 2015, she was "forced to resign in order to protect her career," and "forced to leave her house, her family, [and] a job she excelled in."  (Document No. 14, pp.6, 22).

## PROCEDURAL BACKGROUND

Plaintiff initiated this action with the filing of a "Complaint" (Document No. 1-1) (the "Complaint") in the Superior Court of Mecklenburg County, North Carolina, Case No. 16-CVS-14899, on August 19, 2016.  Defendant BB&T filed its "Notice Of Removal Of Civil Action Under 28 U.S.C. § 1441 And 1446" (Document No. 1) on September 19, 2016.

"Defendant's Partial Motion To Dismiss Plaintiff's Complaint" (Document No. 6) was filed on October 17, 2016.   Then on November 21, 2016, "Plaintiff's Motion To Amend Complaint" (Document No. 11) was filed without objection or opposition from Defendant.  The undersigned issued an "Order And Memorandum And Recommendation" (Document No. 13) allowing "Plaintiff's Motion To Amend Complaint" and recommending that the "Defendant's Partial Motion To Dismiss Plaintiff's Complaint" be denied as moot.

The "First Amended Complaint" (Document No. 14) was filed on November 29, 2016, and asserts causes of action against Defendant BB&T for:  (1) "Title VII of the Civil Rights Act of 1964 Retaliation, Race, and Failure to Promote;  (2) Intentional Infliction of Emotional Distress;  (3) Negligent Infliction of Emotional Distress (pled in the alternative);  (4) Negligent Retention and Supervision;  and (5) Civil Conspiracy.  (Document No. 14, pp. 22-29).  In addition, Plaintiff states in a footnote that she "preserves her right to further allege and amend her complaint for her retaliation and whistleblower claims:  Title VIII of Sarbanes Oxley, the Dodd-Frank Wall Street Reform and Consumer Financial Protection Act, as Plaintiff has an ongoing parallel action in the

United States Department of Labor – Office of Administrative Law Judges." (Document No. 14, p.1, n.1).

"Defendant's Partial Motion To Dismiss Plaintiff's First Amended Complaint" (Document No. 17) and "Memorandum Of Law In Support…" (Document No. 18) were filed on December 21, 2016. Defendant BB&T now seeks dismissal of four of Plaintiff's five claims against it pursuant to Fed.R.Civ.P. 12(b)(6). See (Document Nos. 17 and 18). Specifically, Defendant moves to dismiss Plaintiff's claims for: intentional infliction of emotional distress; negligent infliction of emotional distress; negligent retention and supervision; and civil conspiracy. Id. "Plaintiff's Memorandum Of Law In Opposition…" (Document No. 21) was filed January 4, 2017; and Defendant's "Reply In Support…" (Document No. 22) was filed on January 10, 2017.

"Plaintiff's Motion To Stay Proceedings" (Document No. 23) was filed on May 11, 2017. By her motion, Plaintiff requests the Court to stay this matter because of another ongoing administrative proceeding she contends involves the same facts and circumstances as the present case, and overlapping legal issues. (Document No. 23, p.1). Defendant filed its "Response In Opposition…" (Document No. 24) on May 25, 2017; and "Plaintiff's Reply…" (Document No. 25) was filed on June 1, 2017.

The pending motion for partial dismissal is now ripe for review and a recommendation to the Honorable Robert J. Conrad, Jr.

## STANDARD OF REVIEW

A motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) tests the "legal sufficiency of the complaint" but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992); Eastern Shore Markets, Inc. v. J.D. Assoc. Ltd. Partnership, 213 F.3d 175, 180 (4th Cir. 2000). A

complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains "enough facts to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 697 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also, Robinson v. American Honda Motor Co., Inc., 551 F.3d 218, 222 (4th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

The Supreme Court has also opined that

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" In addition, when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.

Erickson v. Pardus, 551 U.S. 89, 93-94 (2007) (quoting Twombly, 550 U.S. at 555-56).

"Although for the purposes of this motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). The court "should view the complaint in the light most favorable to the plaintiff." Mylan Labs, Inc. v. Matkar, 7 F.3d 1130, 1134 (4th Cir. 1993).

## DISCUSSION

By its pending motion, Defendant BB&T asserts that all of Plaintiff's claims should be dismissed, except the Title VII claims, for failure to state claims upon which relief may be granted. The undersigned will address the challenged causes of action in turn below.

5

## A.    Intentional Infliction of Emotional Distress

Defendant first argues that Plaintiff has not alleged the type of "extreme and outrageous conduct" necessary to sustain a claim for intentional infliction of emotional distress ("IIED"). (Document No. 18, pp.5-10).

To prevail on a claim for IIED, a plaintiff must show:

> "(1) extreme and outrageous conduct by the defendant (2) which is intended to and does in fact cause (3) severe emotional distress." *Waddle v. Sparks,* 331 N.C. 73, 82, 414 S.E.2d 22, 27 (1992) (quoting *Dickens v. Puryear,* 302 N.C. 437, 452, 276 S.E.2d 325, 335 (1981)).  Under North Carolina law, conduct is extreme and outrageous only when it is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Hogan v. Forsyth Country Club Co.,* 79 N.C.App. 483, 493, 340 S.E.2d 116, 123 (1986) (internal quotation omitted). Whether conduct meets this standard is a question of law.  *Lenins v. K–Mart Corp.,* 98 N.C.App. 590, 599, 391 S.E.2d 843, 848 (1990).

Bratcher v. Pharm. Prod. Dev., Inc., 545 F. Supp. 2d 533, 544-45 (E.D.N.C. 2008);  see also, Tompkins v. Charlotte-Mecklenburg School System, 3:16-CV-152-RJC-DSC, 2016 WL 5868086, at *2 (W.D.N.C. Oct. 6, 2016) adopted by 2016 WL 6780339 (W.D.N.C. Nov. 15, 2016);  and Ortiz v. Big Bear Events, LLC, 3:12-CV-341-RJC-DCK, 2013 WL 247444, at *4 (W.D.N.C. Jan. 23, 2013).

> "North Carolina courts have been extremely reluctant to find actionable IIED claims in the employment context...." *Efird,* 342 F.Supp.2d at 427;  *see, e.g., Hogan,* 79 N.C.App. at 493–94, 340 S.E.2d at 122–23 (finding no extreme or outrageous conduct where a supervisor screamed at employees, called them names, cursed at them, disrupted their work, threw menus at them, refused to grant pregnancy leave, and terminated an employee who left work due to labor pains).  In cases where North Carolina courts have found IIED claims actionable, the conduct has been extremely egregious, and involved sexual advances, obscene language, and inappropriate touching.

Id.  See also Dunkin v. Marshall Air Systems, Inc., 3:14-CV-110-FDW-DSC, 2014 WL 4407043, at *3 (W.D.N.C. Sept. 5, 2014) ("In the context of employment discrimination claims, North Carolina courts have been reluctant to find actionable intentional infliction of emotional distress claims."); Gauthier v. Shaw Group, Inc., 3:12-CV-274-GCM, 2012 WL 6043012 at *7 (W.D.N.C. Dec. 4, 2012) ("Mere insults, indignities, and threats do not constitute extreme and outrageous conduct because plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate or unkind").

Finally, this Court has noted that "[s]evere emotional distress means 'any ... type of *severe and disabling* emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so.'" Tompkins, 2016 WL 5868086, at *2 (quoting Waddle, 331 N.C. at 83) (quoting Johnson v. Ruark Obstetrics & Gynecology Assoc., 327 N.C. 283, 304 (1991)).

Defendant argues that Plaintiff's allegations do not support findings of "extreme and outrageous conduct" (Document No. 18, pp.6-10).  Defendant contends that, at most, the Amended Complaint might describe conduct that could be characterized as offensive or discriminatory. (Document No. 18, p.6).  Defendant states that:

> All of Plaintiff's allegations about conduct by BB&T or Mr. Coyle fall far short of the types of behavior North Carolina courts have held to be "extreme and outrageous."  Specifically, Plaintiff alleges nothing more than that she received a poor performance review and final written warning in an allegedly discriminatory manner and that Mr. Coyle treated her unfairly and discriminated against her when he revised her job duties, left her out of critical meetings, and did not make her aware of work-related projects, assignments, and events.  Compl. ¶¶ 63, 81-83.  There are no factual allegations that Mr. Coyle or any other BB&T employee or agent used racial slurs or other inappropriate language directed at Plaintiff, touched Plaintiff, threw anything at Plaintiff or otherwise put her in fear of physical harm, or sexually harassed her.

(Document No. 18, pp.6-7).

Defendant concludes that "[t]here are simply no allegations beyond unfair treatment and disciplinary actions." (Document No. 18, p.7). Moreover, Defendant notes that "[a]n allegation of discrimination or harassment without truly outrageous behavior in the course of the alleged discrimination or harassment is not sufficient to give rise to an actionable IIED claim." (Document No. 18, p.9) (citing Dunkin v. Marshall Air Sys., 3:14-CV-110-FDW-DSC, 2014 WL 4407043 (W.D.N.C. Sep. 5, 2014); Guthrie v. Conroy, 152 N.C. App. 15 (Aug. 6, 2002); and Bendross v. Town of Huntersville, 159 N.C. App. 228 (July 15, 2003)).

In response to Defendant's motion, Plaintiff acknowledges that "[i]t is initially a question of law for the Court to determine whether conduct is 'extreme and outrageous.'" (Document No. 21, p.2) (citing Briggs v. Rosenthal, 73 N.C. App. 672, 676, cert. denied, 314 N.C. 114 (1985)). Plaintiff contends that the underlying conduct here exceeded all bounds of decency tolerated by society and caused her serious mental distress. (Document No. 21, p.3). Plaintiff states that "[s]he could not tolerate defendant's conduct, forcing her to take action to remove herself from her hostile environment that was causing her mental distress of a serious kind." Id.

Plaintiff argues that this case is like other cases finding extreme and outrageous conduct because she was:

> (1) falsely accused of "soliciting" sporting event tickets from vendors despite emails proving the tickets were offered, not solicited; (2) Coyle and his co-conspirators set her up to take the fall in connection with the closing *he* mishandled without her knowledge, thus exposing the bank and Ms. Barrow to a potential fraud investigation; (3) Coyle and his co-conspirators did not report the closing fee income to the IRS because the bank did not want to face another fraud investigation in the same department as it had 8 years prior, which could further expose Plaintiff as a scapegoat; (4) the federal fraud charges contemplated here are far worse than shoplifting in *West*; and (5) Plaintiff was ostracized after

8

> whistleblowing, where Coyle portrayed her as a troublemaker,
> which caused her co-workers to shun her.

(Document No. 21, pp.3-4) (citing <u>Turner v. Thomas</u>, 235 N.C.App. 520, 535-36 (2014) and <u>West v. King</u>, 86 N.C.App. 485 (1987)).  Plaintiff contends that this case is similar to the behavior in <u>Turner</u> where "SBI officers manufactured evidence to prove murder and negate the plaintiff's self-defense claim;  and/or <u>West</u>, where a store manager falsely accused plaintiffs of stealing from his store.  <u>Id.</u>

In reply, Defendant argues that Plaintiff relies on cases in which plaintiffs were falsely accused of crimes, and attempts to "wedge those rulings in an employment dispute where they are inapplicable."  (Document No. 22, p.2).  Defendant further argues that Plaintiff implies that she has been accused of a crime or exposed to criminal charges by BB&T, but such claims are "simply false, and more importantly, it is not alleged in the Amend. Compl."  <u>Id.</u>  (citing Document No. 21, p.4).

Defendant also notes that the Amended Complaint focuses on employment disputes and discrimination in the workplace – not that Plaintiff was accused of a crime, threatened with arrest, or detained – as in <u>Turner</u> and <u>West</u>.  (Document No. 22, p.3-5).  Defendant concludes that Plaintiff has failed to allege sufficiently "extreme and outrageous" conduct for her IIED claim to survive.

The undersigned finds Defendant's arguments persuasive.  Defendant effectively distinguishes the two cases cited by Plaintiff.  Moreover, Plaintiff has failed to identify sufficient allegations in her Amended Complaint to support her IIED claim.  "Courts find extreme and outrageous conduct in situations only in extreme circumstances, such as explicit and physical sexual harassment or graphic language, or threats and actual acts of violence."  <u>Hall v. Rockingham County</u>, 2016 WL 5400413, at *9 (M.D.N.C. Sept. 27, 2016).

Based on the foregoing, the undersigned will recommend that Defendant's motion to dismiss Plaintiff's IIED claim be <u>granted</u>.

**B.     Negligent Infliction of Emotional Distress**

Next, Defendant argues that Plaintiff's allegation for negligent infliction of emotional distress ("NIED") is based only on the alleged intentional conduct of Coyle, and must be dismissed for failure to state a claim. (Document No. 18, pp.10-17).

The undersigned finds this Court's <u>Gauthier</u> decision to be instructive.

> Under North Carolina law, in order to state a claim for negligent infliction of emotional distress (NIED) a plaintiff must allege: (1) the defendant negligently engaged in conduct, (2) it was reasonably foreseeable that such conduct would cause the plaintiff severe emotional distress, and (3) the conduct did in fact cause the plaintiff severe emotional distress. *Johnson v. Ruark Obstetrics and Gynecology Associates, P.A.*, 327 N.C. 283, 304, 395 S.E.2d 85, 97 (1990). "**In a claim for NIED, a plaintiff cannot simply restate facts regarding intentional behavior that form the basis for a claim of IIED to form a claim for NIED**." *Huggins v. N.C. Dept. of Admin.*, 5:10–CV–414–FL, 2011 WL 3917372, at *8 (Sept. 2, 2011). In fact, "[t]he law is clear ... that inherently intentional conduct, such as discrimination, cannot support a claim for negligent infliction of emotional distress." *Springs v. Mayer Brown, LLP*, No. 3:09–cv 352–MR–DSC, 2009 WL 3461231, at *7 (W.D.N.C. Oct. 20, 2009). "Without question, basing a claim upon intentional conduct and simply labeling it as negligent is untenable as an attempt to state a cause of action for negligence." *Riepe v. Sartedt*, No. 5:09–cv–00104, 2010 WL 3326691, at *4 (W.D.N.C. Aug. 23, 2010).

<u>Gauthier</u>, 2012 WL 6043012, at *8 (emphasis added). <u>See also</u> <u>Wilson v. Gaston County</u>, 3:13-CV-058-GCM, 2013 WL 1891276, at *4 (W.D.N.C. May 6, 2013); <u>Barbier v. Durham County Bd. Of Educ.</u>, 225 F.Supp.2d 617, 631 (M.D.N.C. 2002) (citing <u>Mitchell v. Lydall</u>, Inc., 1994 WL 38703, at *3 (4th Cir. Feb.10, 1994) ("When the plaintiff's complaint alleges acts of discrimination that are intentional in nature, and simply concludes that the acts were committed negligently, it is insufficient to state a claim for negligent infliction of emotional distress."); and <u>Hall v.</u>

10

Rockingham County, 2016 WL 5400413, at *8 ("It is well-settled in the Fourth Circuit that allegations of intentional conduct are insufficient to form the basis of a negligent infliction of emotional distress claim.").

Defendant notes that the Amended Complaint makes no separate allegations of negligence to support an NIED claim, rather it states: "Defendant's actions as described above constitute negligence in that it was reasonably foreseeable that such conduct would cause Plaintiff severe emotional distress, and the conduct did in fact cause Plaintiff to suffer such severe emotional distress." (Document No. 18, p.11) (quoting Document No. 14, p.27). Defendant further notes that "Plaintiff alleges only intentional conduct by Mr. Coyle in the form of a poor performance review and final written warning in an allegedly discriminatory manner and that Mr. Coyle treated her unfairly and discriminated against her when he revised her job duties, left her out of critical meetings, and did not make her aware of work-related projects, assignments, and events." Id. (citing Document No. 14, ¶¶ 63, 81, and 82).

In response, Plaintiff contends that "federal courts have consistently analyzed NIED's intent requirement in a manner inconsistent with the law of torts." (Document No. 21, p.6). Plaintiff acknowledges that "courts have held that intentional conduct cannot form the basis of an NIED claim," but "urges this Court to adopt the correct analysis of the intent requirement and apply North Carolina law as Professor Day explained, **a defendant's intentional acts may form the basis of an NIED claim where the resulting *harm* was unintended**." Id. (emphasis in original) (citing Practitioner's Guide to North Carolina Employment Law (2nd ed. 2016)).

On this point, Plaintiff offers a confusing, and seemingly contradictory, conclusion that even though she has alleged that Coyle intended to cause her extreme emotional distress,

> the ultimate harm of severe emotional distress may not have been intended, the intentional acts consisting of the trumped—up

11

allegations against Plaintiff did in fact result in the negligent infliction of severe emotional distress, and the correct analysis described herein and by the North Carolina courts prior to 2012, hold that a defendant's intentional conduct may form the basis of an NIED claim where the resulting harm was unintended.

(Document No. 21, p.8); see also (Document No. 14, p.26).

Defendant's reply re-asserts that Plaintiff has only alleged *intentional* conduct, which cannot support her NIED claim, and has cited no binding authority to the contrary. (Document No. 22, pp.5-6) (emphasis added). Specifically, Defendant again notes that the crux of the allegations involve intentional conduct by her former supervisor: a poor performance review and final written warning; unfair and discriminatory treatment in revised job duties; exclusion from critical meetings; failure to make her aware of work-related projects, assignments, and events. (Document No. 22, p.5) (citing Document No. 14, ¶¶ 63, 81, 82).

Defendant then notes that Plaintiff's argument against dismissal of the NIED claim is that the Court should "ignore the elements of an NIED claim and binding authority analyzing those elements." Id. (citing Document No. 21, pp.6-7) ("Respectfully, federal courts have consistently analyzed NIED's intent requirement in a manner that is inconsistent with the law of torts.").

The undersigned again finds Defendant's arguments most persuasive. The limited, non-binding, authority cited by Plaintiff on this issue is woefully short of what would be sufficient for the undersigned to recommend that this claim survive, and thus reverse the well-established precedents of this Court and the Fourth Circuit. Indeed, this case is more akin to the recent decision of Judge Osteen where, as noted above, he opined: "[i]t is well-settled in the Fourth Circuit that allegations of intentional conduct are insufficient to form the basis of a negligent infliction of emotional distress claim." Hall v. Rockingham County, 2016 WL 5400413, at *8.

Based on the foregoing, the undersigned will recommend that Plaintiff's NIED claim be dismissed.

## C.  Negligent Retention and Supervision

Defendant contends that the negligent retention and supervision claim must be dismissed for lack of an underlying tort.  (Document No. 18, pp.17-19).

The parties agree that the elements of a negligent supervision and retention claim require:

> (1) a tort was committed against the plaintiff;  (2) by a person to whom employer owed the plaintiff a duty of care;  (3) the tortfeasor was incompetent or unfit for the work he was hired to perform;  (4) the employer had actual or constructive notice of the tortfeasor's incompetency or unfitness;  and (5) the plaintiff was injured as a result of the incompetency or unfitness.

(Document No. 21, p.13) (citing Hogan v. Forsyth County Club Co., 79 N.C. App. 483 (1941); see also (Document No. 18, pp.17-18) (citing Smith v. Privette, 128 N.C.App. 490, 494-95 (1998) and Smith v. First Union Nat'l Bank, 202 F.3d 234, 249-50 (4th Cir. 2000).

Defendant asserts that Plaintiff cannot maintain this cause of action based on conduct prohibited by Title VII.  (Document No. 18, p.17).  Rather, the tort underlying a negligent retention and supervision claim must be a common-law tort.  (Document No. 18, pp.17-18) (citing McLean v. Patten Cmtys., Inc., 332 F.3d 714, 721-22) (4th Cir. 2003).  "Where a plaintiff fails to show that an employee of the defendant-employer committed a common law tort recognized in North Carolina, a negligent supervision claim fails as a matter of law."  (Document No. 18, p.18) (citing Jackson v. FKI Logistex, 608 F.Supp.2d 705, 708 (E.D.N.C. 2009) (relying on McLean to dismiss plaintiff's negligent supervision claim arising from an alleged Title VII violation because it was not a common law tort)).

Defendant argues that the only "unlawful acts" identified by the Amended Complaint are acts made unlawful by Title VII's prohibitions on racial discrimination.  Id.  Defendant contends

13

that this is "precisely the cause of action the court said was improper in *Jackson* because violation of Title VII was not a common law tort that can support a negligent supervision or retention claim." Id. Defendant further argues that since Plaintiff's other tortious claims cannot proceed, the negligent retention and supervision claim must also be dismissed. (Document No. 18, p.19).

In response, Plaintiff first argues that the negligent supervision and retention claim survives because the IIED and NIED claims must survive, and those causes of actions are sufficient underlying torts to support this claim. As noted above, the undersigned will recommend that the IIED and NIED claims be dismissed. Assuming those claims are dismissed, they are unavailable as support for the negligent supervision and retention claim.

Plaintiff also "invites the Court to employ the reasoning of 4th Cir. Judge Traxler, who opined that a statutory violation (Title VII) should be sufficient to support the basis of a negligent retention claim." (Document No. 21, p.13). Plaintiff fails to explain, however, that the reasoning she asks the Court to employ was from Judge Traxler's dissent in McLean. See McLean, 332 F.3d at 721-22. Judge Widener, writing for the majority, held that the statutory claims in McLean did *not* support the negligent retention or supervision claim. McLean, 332 F.3d at 719. Applying McLean, the Jackson decision identified above noted

> the Western District of North Carolina concluded that in *McLean* the Fourth Circuit interpreted North Carolina law to not permit a negligent supervision claim arising from an alleged Title VII violation because such a violation was not a common-law tort. *See Rathbone v. Haywood County,* No. 1:08–CV–117, 2008 WL 2789770, at *3 (W.D.N.C. July 17, 2008) (unpublished). Thus, in light of the "binding precedent" in *McLean,* and despite the Western District's misgivings about the Fourth Circuit's interpretation of North Carolina law in *McLean,* the Western District of North Carolina dismissed plaintiff's negligent supervision claim arising from an alleged Title VII violation. *Id.*; *see also Webb v. Starbucks Corp.,* No. 1:07cv271, 2008 WL 4891106, *12 (W.D.N.C. Nov. 12, 2008) (dismissing negligent retention claim for lack of underlying tort pursuant to *McLean*).

14

> This court agrees that in *McLean* the Fourth Circuit interpreted North Carolina law to require a common-law tort to underly a negligent retention and supervision claim.

Jackson, 608 F.Supp.2d at 708.

Plaintiff then argues in the alternative that "by violating Title VII, Defendant necessarily violated the North Carolina statute that prohibits discrimination, N.C. Gen. Stat. §143-422.2, and while plaintiff does not make a direct claim under N.C. Gen. Stat. §143-422.2, she does allege racial discrimination under any and all applicable statutes in her Amended Complaint." (Document No. 21, p.14).

In reply, Defendant notes that Plaintiff cited no authority in opposition to McLean, but instead asks this Court to only apply Judge Traxler's dissent. (Document No. 22, p.11). Defendant goes on to assert that Plaintiff's argument applying N.C. Gen. Stat. §143-422.2 is unpersuasive. Id. Defendant contends that violation of §143-422.2 is also not a common law tort; McLean specifically rejected an attempt to use §143-422.2 to support a negligent retention and supervision claim; and §143-422.2 is unavailing because it is a tort for wrongful termination and Plaintiff resigned. Id. (citing McLean, 332 F.3d at 719 and Graham v. Hardee's Food Systems, Inc., 131 N.C.App. 382, 385 (1996) (additional citations omitted)).

Based on the foregoing, the undersigned will recommend that Plaintiff's claim for negligent supervision and retention be dismissed.

**D.    Civil Conspiracy**

Finally, Defendant argues that Plaintiff's conspiracy claim is not a recognized cause of action. (Document No. 18, pp.19-20).

"To state a claim for civil conspiracy, Plaintiff must adequately plead the following elements: '(1) an agreement between two or more persons to do a wrongful act; (2) an overt act

15

committed in furtherance of the agreement; and (3) damage to the plaintiff.'" (Document No. 18, p.19) (quoting <u>Pleasant Valley Promenade v. Lechmere, Inc.</u>, 120 N.C. App. 650, 657 (1995)). <u>See also</u> (Document No. 21, p.15) (quoting <u>Strickland v. Hedrick</u>, 194 N.C. App. 1, 19 (2008)).

Defendant contends that the claim for civil conspiracy here is barred by the doctrine of intracorporate immunity.

> The Fourth Circuit recognized the doctrine of intracorporate immunity in *Buschi v. Kirven*, 775 F.2d 1240, 1252 (4th Cir. 1985). The doctrine holds that, since at least two persons must be present to form a conspiracy, a corporation cannot conspire with itself, just as an individual cannot conspire with himself. *Id.* Alleging that a corporation is conspiring with its agents, officers, or employees is accusing a corporation of conspiring with itself. *Id.*
>
> Under North Carolina law, allegations like Plaintiff's – claiming a corporation has conspired with its agents or employees – is "tantamount to accusing a corporation of conspiring with itself." *State ex rel. Cooper v. Ridgeway Brands Mfg., LLC*, 184 N.C. App. 613, 625, 646 S.E.2d 790, 799 (2007) (citation omitted). North Carolina courts have therefore held the intracorporate immunity doctrine bars such claims. *Id.* ("The doctrine of intracorporate immunity holds that, since at least two persons must be present to form a conspiracy, a corporation cannot conspire with itself, just as an individual cannot conspire with himself.") (citation omitted). Plaintiff's Civil Conspiracy claim against BB&T should be dismissed because it is barred by the intracorporate immunity doctrine.

(Document No. 18, p.20).

In response, Plaintiff argues that the independent personal stake exception defeats Defendant's alleged intracorporate immunity. (Document No. 21, pp.15-19).

> The intra-corporate immunity doctrine holds that a corporation cannot conspire with itself *except* where one or more members are dominated by independent personal motives. *State ex rel. Cooper v. Ridgeway Brands Mfg., LLC*, 184 N.C. App. 613, 625, 646 S.E.2d 790, 799 (2007), *aff'd in part, rev'd in part*, 362 N.C. 431, 666 S.E.2d 107 (2008). This is referred to as the "individual personal stake exception." *See Bray v. Town of Wake Forest*, No. 5:14-CV-276, 2015 U.S. Dist. LEXIS 44731 at *31-32 (E.D.N.C. Apr. 6,

2015) (intracorporate immunity doctrine provides that corporation (or municipality) cannot conspire with itself any more than a private individual can, and generally the acts of the agent are acts of the corporation (or municipality), except where agent has an independent personal stake in the conspiracy; this exception has been limited to require a personal financial stake) (citations omitted); *See also Tate v. Sallie Mae, Inc.*, No. 3:10-cv-386, 2011 U.S. Dist. LEXIS 93235 at *7 (W.D.N.C. Aug. 19, 2011) (4th Circuit requires that co-conspirator employee have a financial stake in outcome of conspiracy that is separate from and independent of his financial stake in the corporation; debt collector's motivation to use abuse methods to collect debts in order to earn incentives from corporate employer is not enough to invoke independent financial stake exception to intra-corporate immunity doctrine).

(Document No. 21, p.16).

Plaintiff contends that Coyle "had a financial stake in the outcome of the conspiracy that was separate from and independent of his financial stake in the corporation." (Document No. 21, p.17). Specifically, Plaintiff asserts that Coyle was involved in a "triangle scheme between BB&T, the law firm, and the syndicator where everyone benefitted financially." Id. Moreover, Plaintiff contends that Coyle received illegal commissions "and his interests were separate and apart from the corporation as the benefits he received were not in furtherance of legitimate corporate objectives." Id. Plaintiff concludes that her termination would ensure continuation of the scheme and "secure Coyle's career, retirement, and pension as well as the careers of his friends." (Document No. 21, pp.17-18).

Plaintiff also asserts that Jeffries-Jones was part of the conspiracy to terminate Plaintiff in order to secure her career, retirement, and pension. (Document No. 21, p.18).

In reply, Defendant argues that the personal stake exception is inapplicable to this case. (Document No. 22, pp.12-15). Defendant notes that civil conspiracy cause of action in the Amended Complaint only alleges conspiring with or among BB&T's employees, and as such the claim is barred by the doctrine of intracorporate immunity. (Document No. 22, p.12) (citing

17

Buschi v. Kirven, 775 F.2d 1240, 1252 (4th Cir. 1985) and State ex rel. Cooper v. Ridgeway Brands Mfg., *LLC*, 184 N.C. App. 613, 625 (2007)).

Defendant further argues that Plaintiff's reliance on Bray and Tate is misplaced. (Document No. 22, pp.13-14). Defendant first asserts that as in Bray, the complaint here fails to include allegations about personal financial gain arising out of the employment decisions. (Document No. 22, p.13). Second, as in Tate, the personal stake exception does not apply here where Plaintiff has not alleged a financial stake independent of BB&T. (Document No. 22, pp.13-14). Instead, the response asserts that Coyle and Jeffries-Jones sought to secure their "career, retirement, and pension." (Document No. 21, p.18; Document No. 22, p.14).

Defendant also argues that the response has added lengthy allegations that do not appear in the Amended Complaint, and that such an unsupported narrative cannot avoid dismissal where her pleading failed to plead facts to support an independent financial stake exception. (Document No. 22, p.15).

The undersigned finds that this issue presents a closer call than the previous claims. This Court has found that allegations of civil conspiracy are sufficient to overcome dismissal based on the intracorporate immunity doctrine "where the plaintiff alleges that the corporate employees were controlled by personal motives or where their actions exceeded the bounds of their authority." Bear Hollow, L.L.C. v. Moberk, L.L.C., 5:05-CV-210-RLV, 2006 WL 1642126, at *13 (W.D.N.C. June 5, 2006) (citing Buschi v. Kirven, 775 F.2d 1440, 1252 (4th Cir. 1985)); see also, ePlus Technology, Inc. v. Aboud, 313 F.3d 166, 179-180 (4th Cir. 2002).

Viewing the Amended Complaint in the most favorable light, the undersigned finds that Plaintiff's allegations are sufficient to survive dismissal pursuant to Fed.R.Civ.P. 12(b)(6). The Amended Complaint asserts that Coyle and Jeffries-Jones conspired to terminate Plaintiff and "had

a personal financial stake in the outcome of the conspiracy." (Document No. 14, p.17). According to the Amended Complaint, Coyle terminated Plaintiff to "avoid being exposed for illegally receiving commissions when he represented BB&T in these transactions when he was not a licensed broker." (Document No. 14, p.18). Plaintiff alleges that "Coyle *personally* received these commissions and other financial benefits and would stand to lose those benefits if Plaintiff exposed him." Id. (emphasis added). Moreover, the Amended Complaint alleges that Jeffries-Jones conspired to terminate Plaintiff to "secure her career, retirement, pension, *and other benefits received as a direct result of Coyle's deals*." Id. (emphasis added).

In addition to allegations that Coyle and Jeffries-Jones conspired based on personal motives and exceeded the bounds of their authority by engaging in unlawful transactions, the Amended Complaint also alleges that "Coyle, Jeffries and BB&T acted together, in concert . . . to do unlawful acts that constituted a repeated strategy deploying systemic tactics that allowed them to pass the risk to Ms. Barrow and disavow liability." (Document No. 14, pp.28-29). Plaintiff further states that alleged acts were part of an agreement to injure Plaintiff and "constitute[d] overt, tortious, and/or unlawful acts in furtherance of the conspiracy." (Document No. 14, p.29).

The undersigned notes that neither side has argued that survival of the civil conspiracy claim would support Plaintiff's negligent supervision and retention claim. (Document Nos. 18, 21, and 22). This Court has noted that "in North Carolina there is no independent cause of action for civil conspiracy; the claim can only arise where there is an underlying claim for unlawful conduct." Byrd v. Hopson, 265 F.Supp.2d 594, 599 (W.D.N.C. 2003) (citations omitted). Here, it appears that the alleged civil conspiracy arises from the Title VII claims, which as discussed above, do not support the negligent supervision and retention claim. See (Document No. 14); see

also, (Document No. 21, p.15) ("They conspired to unlawfully retaliate against Plaintiff by setting her up for termination….").

Based on the foregoing, the undersigned will recommend that the motion to dismiss Plaintiff's civil conspiracy claim be denied, without prejudice to Defendant seeking such relief again following further development of the record through discovery and summary judgment briefing.

## CONCLUSION

**IT IS RESPECTFULLY RECOMMENDED** that "Defendant's Partial Motion To Dismiss Plaintiff's First Amended Complaint" (Document No. 17) be **GRANTED in part and DENIED in part,** by dismissing Plaintiff's IIED, NIED, and negligent supervision and retention claims, but allowing the civil conspiracy claim to survive along with the unchallenged Title VII claims.

## TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed within **fourteen (14) days** of service of same. Responses to objections may be filed within fourteen (14) days after service of the objections. Fed.R.Civ.P. 72(b)(2). Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to *de novo* review by the District Court. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005). Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal. Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Snyder v. Ridenhour, 889

F.2d 1363, 1365 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), reh'g denied, 474 U.S. 1111 (1986).

**SO RECOMMENDED**.

Signed: July 7, 2017

David C. Keesler
United States Magistrate Judge