UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

3:16-cv-00675-RJC-DCK

| RASCHECA BARROW, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) **ORDER** |
| BRANCH BANKING & TRUST COMPANY, | ) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |

**THIS MATTER** comes before the Court on Defendant's Partial Motion to Dismiss Plaintiff's Amended Complaint, (Doc. No. 17); Defendant's Memorandum of Law in Support, (Doc. No. 18); Plaintiff's Response, (Doc. No. 21); the Magistrate Judge's Memorandum and Recommendation ("M&R"), (Doc. No. 28); Plaintiff's Objections, (Doc. No. 30); and Defendant's Response to Plaintiff's Objections, (Doc. No. 34).

### I. BACKGROUND

No party has objected to the Magistrate Judge's statement of the factual and procedural background of this case. Therefore, the Court adopts the facts as set forth in the M&R.

### II. STANDARD OF REVIEW

A district court may assign dispositive pretrial matters, including motions to dismiss, to a magistrate judge for "proposed findings of fact and recommendations." 28 U.S.C. § 636(b)(1)(A) and (B). The Federal Magistrate Act provides that "a district court shall make a de novo determination of those portions of the report or specific proposed findings or recommendations to which objection is made." Id. at § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3); Camby v. Davis, 718 F.2d 198, 200 (4th Cir. 1983).

On a motion to dismiss for failure to state a claim, the Court must accept the factual allegations of the claim as true and construe them in the light most favorable to the nonmoving party. Coleman v. Maryland Ct. of Appeals, 626 F.3d 187, 189 (4th Cir. 2010). To survive the motion, the "complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). To be "plausible on its face," a plaintiff must demonstrate more than "a sheer possibility that a defendant has acted unlawfully." Id. A plaintiff therefore must "articulate facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling [it] to relief, i.e., the 'plausibility of entitlement to relief.'" Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (quoting Iqbal, 556 U.S. at 678).

### III. DISCUSSION

Plaintiff's First Amended Complaint alleges claims against Defendant for: (1) violating Title VII of the Civil Rights Act of 1964; (2) intentional infliction of emotional distress ("IIED"); (3) negligent infliction of emotional distress ("NIED"); (4) negligent retention and supervision; and (5) civil conspiracy. (Doc. No. 14 at 22-29). Defendant filed a partial motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). (Doc. No. 17). In their motion, Defendant seeks to dismiss Plaintiff's claims for: (1) IIED; (2) NIED; (3) negligent retention and supervision; and (4) civil conspiracy. (Id.). The Magistrate Judge's M&R recommends partially granting Defendant's motion by allowing Plaintiff's civil conspiracy claim to survive but dismissing her claims for IIED, NIED, and negligent retention and supervision. (Doc. No. 28).

In his M&R, the Magistrate Judge found that Defendant's behavior, as alleged by Plaintiff, failed to clear the high bar of what North Carolina considers "extreme and outrageous" conduct required for an IIED claim. (Id.). Furthermore, the Magistrate Judge determined that Plaintiff's

allegations for her NIED claim were based on discrimination. (Id.). As inherently intentional conduct, the Magistrate Judge found that discrimination cannot support a claim based on principles of negligence, thus requiring the dismissal of Plaintiff's NIED claim. (Id.). Because the Magistrate Judge recommended dismissing Plaintiff's IIED and NIED claims, the M&R dismisses Plaintiff's negligent retention and supervision as well. (Id.). Such a claim requires a common law tort as its foundation and, without her IIED or NIED claims, none are found in Plaintiff's complaint. (Id.). Lastly, the Magistrate Judge recognized that Plaintiff's arguments supporting her civil conspiracy claim were persuasive enough to survive dismissal. (Id.).

Plaintiff objects to the M&R, arguing that discrimination constituted conduct outrageous enough to fulfill an IIED claim. (Doc. No. 30). Furthermore, Plaintiff argues that discriminatory acts may support an NIED claim because Defendant did not specifically intend to bring about the emotional distress of Plaintiff. (Id.). Finally, because her claims for IIED and NIED must survive, Plaintiff says so too must her claim for negligent retention and supervision. (Id.).

After careful consideration of the M&R and both parties' arguments, this Court agrees with the recommendations set forth by the Magistrate Judge. Because objections were filed by the Plaintiff, the Court will discuss each objection in detail.

A. <u>Intentional Infliction of Emotional Distress</u>

In order to succeed on a claim for IIED, a plaintiff must prove: "(1) extreme and outrageous conduct, (2) which is intended to cause and does cause (3) severe emotional distress to another." <u>Dickens v. Puryear</u>, 276 S.E.2d 325, 335 (N.C. 1981). The issue before the Court is what behavior constitutes "extreme and outrageous conduct." Under North Carolina law, extreme and outrageous conduct "exceeds all bounds usually tolerated by decent society." <u>Stanback v. Stanback</u>, 254 S.E.2d 611, 622 (N.C. 1979).

Plaintiff argues that Defendant's discriminatory and hostile work environment amounted to extreme and outrageous conduct. (Doc. No. 21 at 3–5; Doc. No. 30 at 9). Defendant, on the other hand, points to case law describing the high bar "outrageous conduct" must clear when alleged in the employment context. (Doc. No. 17 at 6–10) (citing Moody-Williams v. Lipscience, 953 F. Supp. 2d 677, 690 (E.D.N.C. 2012); Thomas v. Northern Telecom, Inc., 157 F. Supp. 2d 627 (M.D.N.C. 2000)).

The Court agrees with the Magistrate Judge's M&R and Defendant's argument regarding Plaintiff's IIED claim. North Carolina law does indeed establish a high bar for considering conduct extreme and outrageous in the employment context. Successful claims "typically 'involve[] sexual advances, obscene language, and inappropriate touching.'" Gauthier v. Shaw Grp., Inc., No. 3:12-CV-00274-GCM, 2012 WL 6043012, at *8 (W.D.N.C. Dec. 4, 2012) (quoting Bratcher v. Pharm. Prod. Dev., Inc., 545 F.Supp.2d 533, 545 (E.D.N.C.2008)). This is not to say that discrimination is acceptable. Nor does the Court suggest that discrimination may never amount to extreme and outrageous conduct. Plaintiff's facts simply fail to meet the level of outward conduct North Carolina law requires for an IIED claim.

The case Hogan v. Forsyth Country Club Co., 340 S.E.2d 116, 123 (N.C. Ct. App. 1986) illustrates what actions constitute extreme and outrageous conduct. In Hogan, an employer discharged two waitresses of a country club after alleging harassment by another employee, the chef. Id. One waitress successfully pled an IIED claim. The other did not. Id. at 121–22. In respect to the successful allegations put forth by the first waitress, the chef's acts constituted extreme and outrageous conduct when he:

> made sexually suggestive remarks to [the waitress] while she was working, coaxing her to have sex with him and telling her that he wanted to "take" her. He would brush up against her, rub his penis against her buttocks and touch her buttocks with his hands. When she refused his advances, he screamed profane names at her, threatened her with bodily injury, and on one occasion, advanced toward her with a knife and slammed it down on a table in front of her.

<u>Id.</u> at 121. The second waitress' IIED claim failed when the chef's actions included screaming, shouting, and throwing menus. <u>Id.</u> at 122-23. The Court differentiated the situations by stating:

> Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. . . .
> The liability clearly does not extend to mere insults, indignities, threats, . . . . The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate or unkind. There is no occasion for the law to intervene in every case where some one's feelings are hurt. There must still be freedom to express an unflattering opinion, and some safety valve must be left through which irascible tempers may blow off relatively harmless steam. . . .

<u>Id.</u> at 123 (quoting <u>Restatement (Second) of Torts</u>, § 46 comment (d) (1965)).

Discrimination is deplorable, but the acts Plaintiff allege resemble the latter waitress's unsuccessful claims in <u>Hogan</u>. Plaintiff alleges she was falsely accused her of soliciting sporting tickets, set up to take the blame for her superior's mishandling of a closing, set up as a potential scapegoat for a possible fraud investigation, and ostracized by her co-workers after raising complaints regarding her superior. (Doc. No. 21 at 3–4). While these events, if true, are unacceptable, they fail to clear the level North Carolina law mandates for extreme and outrageous conduct. Plaintiff was not touched inappropriately, nor was she subject to insults or obscene comments. As such, this Court adopts the recommendation of the M&R and grants Defendant's motion to dismiss in regards to Plaintiff's IIED claim.

B. Negligent Infliction of Emotional Distress

To properly state a claim for NIED, Plaintiff must allege that "(1) the defendant negligently engaged in conduct, (2) it was reasonably foreseeable that such conduct would cause the plaintiff severe emotional distress (often referred to as 'mental anguish'), and (3) the conduct did in fact cause the plaintiff severe emotional distress." Johnson v. Ruark Obstetrics & Gynecology Assocs., P.A., 395 S.E.2d 85, 97 (N.C. 1990). Plaintiffs cannot merely import the alleged intentional conduct of an IIED claim into a NIED claim. Gauthier v. Shaw Grp., Inc., No. 3:12-CV-00274-GCM, 2012 WL 6043012, at *8 (W.D.N.C. Dec. 4, 2012) (quoting Huggins v. N.C. Dept. of Admin ., 5:10–CV–414–FL, 2011 WL 3917372, at *8 (Sept. 2, 2011)).

The Magistrate Judge's M&R agreed with Defendant's argument to dismiss Plaintiff's NIED claim due to the inherent intentional character of discrimination claims. (Doc. No. 28 at 10). Plaintiff objects to the M&R, arguing that the Federal Rules of Civil Procedure allow her to plead contradictory claims in the alternative. (Doc. No. 30 at 2). Plaintiff agrees with Defendant that intent is the controlling issue in her NIED claim. Plaintiff disagrees, however, on how to analyze intent within her claim. (Id. at 4). She explains that the Court should not focus on the tortfeasor's intent to actually *commence* an act when assessing negligence, but rather the Court should focus on the intent of the tortfeasor to *cause* the resulting effect of those acts. (Id. at 4-5). To illustrate her point, Plaintiff recites the following examples:

> Person A backed up his car, Person A hit nice lady, and nice lady is injured. This was an INTENTIONAL act to back up Person A's car. It is an INTENTIONAL TORT if Person A intended for nice lady to be injured; However, it was a NEGLIGENT TORT if Person A did not intend to injure nice lady. …
>
> Bob made crude jokes and offensive comments in the work place; Nice Lady Jan heard crude jokes and offensive comments. Nice Lady Jan had a nervous breakdown. Bob's verbal statements were intentional (volitional) conduct, but nevertheless NEGLIGENT unless Bob intended to cause the injury that resulted.

(Id.).

After carefully considering the M&R, Plaintiff's First Amended Complaint, and the parties' supporting memoranda, this Court agrees with the Magistrate Judge's recommendation to dismiss Plaintiff's NIED claim. Plaintiff is correct that Fed. R. Civ. P. 8(d)(2) allows claimants to plead in the alternative. Nonetheless, Plaintiff's complaint and alleged facts must support that alternative claim. Because the facts of Plaintiff's complaint center on allegations of discrimination, the Court focuses on the inherent intentional character of discrimination claims generally.

When assessing the issue of intent, Plaintiff misconstrues the point made by the M&R and its cited case law. As the Magistrate Judge explains, discrimination is inherently intentional. (Doc. No. 28 at 10) (quoting Gauthier v. Shaw Group, Inc., 3:12-CV-274-GCM, 2012 WL 6043012 at *8 (W.D.N.C. Dec. 4, 2012)). Plaintiff's own hypotheticals demonstrate this point. It is true that Person A commits an intentional tort if he reverses his car aiming to hit another. Furthermore, if Person A did not have this intent, a negligence claim would be appropriate. Importantly, when alleging discrimination, Plaintiff pleads the former, not the latter scenario. Plaintiff's alleged discrimination is inherently intentional both in its execution and its outcome. While motives behind reversing a car may range from leaving a parking space to hitting a nice lady, discrimination has only one desired effect: to depreciate the value of another on the basis of some immutable characteristic. Courts within the 4th Circuit agree with this principle and have applied it multiple times. See Mitchell v. Lydall, Inc., 1994 WL 38703, at *3, 1994 U.S.App. LEXIS 2177, at *9–10 (4th Cir. Feb. 10, 1994) (finding that the plaintiff failed to state a claim because the allegations of the case charged "nothing but intentional acts by [defendant] in failing to accommodate [plaintiff's] MS condition and in discharging him."); Barbier v. Durham Cty. Bd. of Educ., 225 F.

Supp. 2d 617, 631 (M.D.N.C. 2002) (holding that where "plaintiff's complaint alleges acts of discrimination that are intentional in nature, and simply concludes that the acts were committed negligently, it is insufficient to state a claim for negligent infliction of emotional distress"); Thomas v. N. Telecom, Inc., 157 F. Supp. 2d 627, 637 (M.D.N.C. 2000) (relying on Mitchell to find discriminatory conduct inherently intentional and therefore improper under an NIED claim).

Plaintiff's complaint relies upon facts based on discrimination as the underlying conduct of Defendant. The complaint begins stating, "This action is brought, *inter alia*, to remedy discrimination against Plaintiff on the basis of retaliation for opposing unlawful employment practices under Title VII and other statutes …." (Doc. No. 17 at ¶ 1). Plaintiff mentions conduct by Defendant and Mr. Coyle that does seem separate from discrimination.[1] For instance, Plaintiff alleges that Mr. Coyle acted contrary to established standards of business and, in doing so, risked a government investigation. (Id. at ¶ 49). However, later in her complaint, Plaintiff makes it abundantly clear that her enumerated claims derive from Defendant's alleged discrimination. Prior to listing her causes of action, Plaintiff summarizes the facts stating, "[Plaintiff] contends she was subjected to disparate treatment and alternatively disparate impact due to her race, in terms of the work conditions, failure to promote, privileges, benefits and work environment." (Id. at ¶ 95.) Plaintiff also alleges that Defendant BB&T knew or should have known that its employees were treating Plaintiff differently than other non-African American employees. (Id. at ¶¶ 99, 103).

Because Plaintiff's builds her Complaint off of alleged discrimination, she has not properly pled a NIED claim. While Plaintiff may plea in the alternative, her "material factual allegations charge nothing but intentional acts." Mitchell, 1994 WL 38703, at *3. Accordingly, this Court adopts the Magistrate Judge's recommendation to dismiss Plaintiff's NIED claim.

---

[1] These facts seem to pertain to Plaintiff's separate action based on whistleblower allegations. Plaintiff does not support an argument on how these facts should pertain to her current discrimination claims before the Court.

C. Negligent Retention and Supervision

"To support a claim of negligent retention and supervision against an employer, the plaintiff must prove that 'the incompetent employee committed a tortious act resulting in injury to plaintiff and that prior to the act, the employer knew or had reason to know of the employee's incompetency.'" Smith v. Privette, 495 S.E.2d 395, 398 (NC Ct App1998) (quoting Graham v. Hardee's Food Systems, 465 S.E.2d 558, 560 (NC Ct App 1996)). All parties agree that the controlling issue before the Court is whether or not Plaintiff's complaint features a common law tort to support her negligent retention and supervision claim.

The Magistrate Judge's M&R states, absent her IIED and NIED claims, Plaintiff relies on a Title VII violation, which North Carolina does not recognize as a common law tort. (Doc. No. 28 at 13-15). Plaintiff responds, arguing that her IIED and NIED claims must survive Defendant's motion to dismiss and therefore constitute the underlying tort necessary for her negligent retention and supervision claim. (Doc. No. 30 at 12). Plaintiff also argues that she successfully alleged a general negligence claim. (Id.). Though not pled specifically, Plaintiff believes the negligence claim emerges through a "loose reading" of her complaint. (Id.).

If Plaintiff successfully pled either an IIED or NIED claim, she would fulfill the first element of her negligent retention and supervision claim. Unfortunately, because this Court dismissed Plaintiff's IIED and NIED claims above, her negligent retention and supervision claim relies upon her surviving Title VII claim. As both the M&R and Defendant point out, the Fourth Circuit's case, McLean v. Patten Communities, Inc., 332 F.3d 714, 719 (4th Cir. 2003), held that a Title VII violation does not constitute a common law tort in North Carolina. See also Jackson v. FKI Logistex, 608 F. Supp. 2d 705, 708 (E.D.N.C. 2009) (relying on McLean to find that "[b]y definition, the alleged violations of Title VII and 42 U.S.C. § 1981 that plaintiffs describe in count

one are not common-law torts."). As a Fourth Circuit ruling, McLean is binding upon this Court. Accordingly, the Court dismisses Plaintiff's negligent retention and supervision claim.

Neither party has argued that the negligent retention and supervision claim can survive on Plaintiff's civil conspiracy claim. As the M&R notes, even if Plaintiff's civil conspiracy claim survives Defendant's motion to dismiss, it fails to establish a negligent retention and supervision claim. (Doc. No. 28 at 19). North Carolina law does not recognize civil conspiracy as an independent cause of action. Byrd v. Hopson, 265 F. Supp. 2d 594, 599 (W.D.N.C. 2003), aff'd, 108 F. App'x 749 (4th Cir. 2004). Rather, civil conspiracy requires an underlying claim for unlawful conduct. Id. The survival of the civil conspiracy claim will hinge on Plaintiff's remaining Title VII claim, which does not support a negligent retention and supervision claim.

Lastly, Plaintiff's argument that she has established an implied negligence claim through a "loose reading" of her complaint is not persuasive to the Court. Even if Plaintiff were to allege a separate negligence claim, it must fail for the very reasons this Court dismisses her NIED claim. Plaintiff alleges Defendant discriminated against her as an African American. (Doc. No. 14 at ¶¶ 1, 95, 99, 103-04, 109, 112115-33). Plaintiff again argues that the controlling issue is the intent of bringing about an effect. (Doc. No. 30 at 13) (stating "it was reasonably foreseeable that such conduct would cause Plaintiff severe emotional distress, and the conduct did in fact cause Plaintiff to suffer such severe emotional distress."). As described at length above, this argument is incorrect. As inherently intentional conduct, Discrimination cannot form the foundation of a negligence claim.

D. Civil Conspiracy

The last claim in Defendant's motion to dismiss is Plaintiff's civil conspiracy claim. No parties object to the M&R's recommendation allowing the civil conspiracy claim to survive. After

carefully considering the M&R, Plaintiff's First Amended Complaint, and the parties' supporting memoranda, this Court agrees with the Magistrate Judge's recommendation that Defendant's motion to dismiss be denied as applied to the civil conspiracy claim.

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that:

1. The Magistrate Judge's M&R, (Doc. No. 28), is **ADOPTED**; and
2. Defendant's First Motion to Dismiss, (Doc. No. 17), is **GRANTED in part and DENIED in part**.

Signed: September 18, 2017

Robert J. Conrad, Jr.
United States District Judge